2020 IL App (1st) 192629-U

No. 1-19-2629

Order filed October 28, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| IN RE MARRIAGE OF | ) | |
| JACEK GLOD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County |
| | ) | |
| and | ) | No. 12D3897 |
| | ) | |
| MARTA GLOD, | ) | Honorable |
| | ) | David E. Haracz, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the circuit court where the court did not abuse its discretion in granting Jacek's petition to modify his support obligation because Jacek demonstrated a substantial change in circumstances and where the court did not abuse its discretion in denying Marta's petitions for rule to show cause because Jacek was not "willful and contumacious" in his failure to comply with his support obligations.

¶ 2    This case comes before this court following the circuit court's order modifying the child support payments for petitioner Jacek Glod and denying two petitions for rule to show cause filed

by respondent Marta Glod. On appeal, Marta raises a number of contentions in her *pro se* brief; however, her primary assertions seem to be that the court erred in granting Jacek's petition to modify his child support obligation where he failed to show a substantial change in circumstances and misrepresented his income to the court and that the court erred in denying her petitions for rule to show cause where Jacek failed to comply with his support obligations prior to the modification. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4        This court has previously affirmed the circuit court's February 2015 determination of Jacek's support obligations over his claim that the court abused its discretion in imputing income to him in the amount of $8,000 per month and ordering him to pay $2,860 per month in child support to Marta. *In re Marriage of Glod*, 2017 IL App (1st) 151768-U (unpublished order under Illinois Supreme Court Rule 23). In March 2016, nearly a year before this court entered that order on March 30, 2017, Jacek filed in the circuit court a petition to modify his child support obligations. In the petition, Jacek contended that his sole source of income derived from his employment as a truck driver for Bulldog Express, for which he was paid at a rate of $16 an hour. Jacek maintained that his paycheck varied based on his work schedule and that he would average $770 gross income per week, with a gross monthly income of $3,465. Jacek asserted that under section 505(a)(1) of the of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(1) (West 2016)), his support obligation should be 32% of his net income. He therefore asked the court to modify his child support payment from his current payment of $2,860 per month to 32% of his net income, or approximately $830 per month. Jacek attached to his petition paystubs showing his earnings from January 8, 2016, through March 4, 2016. Jacek also attached an affidavit to his petition in which he averred that currently 45% of his net income went toward his child support

obligations while the remainder went toward his living expenses. He further averred that his current child support obligation of $2,860 per month exceeded his monthly net income.

¶ 5    On March 27, 2017, Marta filed a *pro se* motion for outstanding medical bills and school fees. Marta contended that Jacek was obligated to pay half of the medical and school expenses for the parties' three minor children. Marta also asked the court to enter an order requiring Jacek to pay half of the monthly health insurance premiums for the parties' minor children.

¶ 6    On July 12, 2017, after the mandate issued in this court's 2017 order, Jacek filed a second petition to modify his child support obligation. Jacek's attorney acknowledged before the circuit court that this second petition was identical to the petition filed in March 2016. Marta, through counsel, filed a motion to strike and dismiss Jacek's petition for modification contending that Jacek had failed to show any substantial change in circumstances of either him or Marta since the entry of the judgment for dissolution of marriage.

¶ 7    On August 1, 2017, Marta filed, through counsel, a petition for rule to show cause and a finding of indirect civil contempt, contending that the parties' February 2015 judgment for dissolution of marriage judgment required Jacek to pay half of the minor's children's educational expenses, health insurance premiums, and uncovered medical expenses. Marta asserted that Jacek had failed to pay his share of these expenses and that his deliberate disregard for the judgment of dissolution should be considered contempt of court. In response, Jacek asserted that the October 2013 order Marta relied upon in her petition was superseded by the February 2015 dissolution judgment. Jacek maintained that the 2015 dissolution judgment did not obligate him to pay half of the uncovered medical expenses for the parties' minor children.

¶ 8    Jacek also filed a response to Marta's motion to strike and dismiss his petition to modify contending that the circuit court was bound by trial court's judgment that as of the date of trial in

June 2014, Jacek's net income was $8,000 per month. Jacek contended that the exhibits and affidavit attached his petition clearly show that he now earns $3,465 gross income per month. Jacek asserted that this difference showed a change in his circumstances warranting modification of his support obligation.

¶ 9    Marta filed a second petition for rule to show cause on December 21, 2017, contending that Jacek had consistently underpaid his child support obligation since the entry of the judgment for dissolution. Marta asserted that as of the date of the petition, Jacek owed $219,745.33 in child support arrears and interest. Marta asked the court to find Jacek in contempt of court for failing to comply with his child support obligations. In response, Jacek asserted that he did not willfully violate the dissolution judgment where he was unable to pay the support obligations set out in judgment as demonstrated by the documents attached to his petition to modify.

¶ 10    The parties submitted various exhibits detailing Jacek's credit card spending, documents from Jacek's employers, and other documents relevant to Jacek's finances. The parties stipulated to the exhibits and other documents attached to their pleadings and asked the court to take the matter under advisement. Three months later, however, another hearing was held where the court stated that in preparing its judgment, it had "some questions" and wanted to hear "some testimony" from the parties. After reviewing the exhibits with the attorneys, the court examined both parties. Jacek testified that since March 2017, he earned $20 an hour working 40 hours per week as a truck driver for Prime Enterprises. Jacek testified that he did not have any bank accounts or other sources of income. Jacek testified that he would cash the paychecks issued to him by Prime Enterprises at a currency exchange. Prior to working for Prime Enterprises, Jacek worked for Bulldog Express as a truck driver and was working there at the time of the dissolution judgment. After Bulldog Express went out of business in 2017, Jacek approached his then-girlfriend, now-wife Anna Pajak

with the idea to buy a truck from Bulldog Express for $7,000 so he could drive it as her employee. Jacek testified that Pajak purchased the truck because she could afford it and he could not. Jacek testified that no other employer would hire him because of his child support obligations. He testified he currently paid 65% of his income in child support each month.

¶ 11    Pajak testified at a deposition regarding her ownership of Prime Enterprises. She testified that she had no experience in the commercial trucking industry before Jacek approached her with the idea of purchasing a truck for him to drive. She testified that she earned about $141,000 per year in gross income from Prime Enterprises and paid Jacek about $800 per week. She testified that her net income from Prime Enterprises was about $28,000 per year. She further testified that she currently sent about 60% of his income, more than $400 per week, to cover his child support obligations.

¶ 12    The court issued its judgment on both Marta's petitions for rule to show cause and Jacek's petition to modify support in a single written order. The court noted that documents from the Department of Health and Family Services showed that Jacek was $331,330.93 in arrears on his child support payments. The court found that "[t]hese figures do not represent the reality of Jacek's ability to pay at this time or any time in the past. If he is held to these numbers, he will be condemned to a lifetime of overwhelming debt." The court stated that it believed that "several findings" in the February 2015 judgment for dissolution "were incorrect." The court noted, however, that it was bound by the principles of *res judicata* with regard to those findings. The court found that Jacek testified credibly that his gross weekly income was $800 and that he had no other sources of income and no bank accounts. The court therefore found that there had been a substantial change in Jacek's financial circumstances from what they were found to be at trial in 2014. The court found that Jacek was not "willful and contumacious" in his failure to pay the full

amount of support ordered in the judgment for dissolution. The court therefore granted Jacek's petition to modify and reduced his support obligations to $672.48 per month, with an additional amount to cover his share of the children's medical insurance.

¶ 13    With regard to Marta's petitions for rule to show cause, the court observed that there was no order that obligated Jacek to pay half of the children's educational expenses or health insurance premiums, so he could not be held in contempt for failing to pay those amounts. The court also found that Jacek was not "willful and contumacious" in his failure to pay his share of the children's uncovered medical expenses, but simply lacked the "financial wherewithal" to pay those expenses. The court therefore denied both of the petitions for rule to show cause. Nonetheless, the court found that, based on the parties' respective incomes, Jacek would be responsible for 28% of the children's unpaid medical expenses. This appeal follows.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, Marta contends that the court erred in granting Jacek's petition to modify his support obligations where Jacek failed to show a substantial change in circumstances. Marta asserts that Jacek also underreported his income and used Pajak to hide his true income so that he would have a lower support obligation. Marta also contends that the court erred in denying her petitions for rule to show cause.

¶ 16                          A. Petition to Modify Support

¶ 17    We will first address Marta's contention that the court erred in granting Jacek's petition to modify the amount of his support obligation. Section 510(a)(1) of the Act provides that "[a]n order for child support may be modified *** upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a)(1) (West 2016). A substantial change in circumstances means either the needs of spouse receiving the maintenance or the ability of the obligor spouse to pay that maintenance

has changed. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198 (2011) (citing *In re Marriage of Neuman*, 295 Ill. App. 3d 212, 214 (1998)). "The party seeking modification of a maintenance order has the burden of showing that a substantial change in circumstances has occurred." *In re Marriage of Anderson*, 409 Ill. App. 3d at 198 (citing *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984)). The trial court is afforded wide latitude in determining whether a substantial change in circumstances has occurred (*In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 13) and we will not disturb a trial court's decision to modify maintenance absent an abuse of discretion (*Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)).

¶ 18    Here, Marta contends that Jacek failed to meet his burden of showing that a substantial change in circumstances occurred because he failed to plead specific facts demonstrating such a change. In order to fully assess whether Jacek demonstrated a substantial change in circumstances, it is necessary to consider the facts as they were at the time of trial in 2014 resulting in the trial court's 2015 dissolution judgment in which it determined that Jacek's imputed net income was $8,000 per month and setting his support obligation at $2,860 per month. At the time, Jacek testified that he was a truck driver for Bulldog Express and made $15 to $20 per hour. Prior to becoming a truck driver, Jacek owned a tow truck business where he earned between $6,000 and $9,000 per month in gross income. Jacek testified that he left the tow truck business and sold his tow truck in order to work full time for Bulldog Express. The trial court, however, did not believe that Jacek would voluntarily reduce his income by leaving the tow truck business and driving a truck full time. The court found that despite his testimony to the contrary, Jacek was still able to tow vehicles and earn more income from that business than he did driving a truck. The court also noted that Jacek had five bank accounts, had several trucks and other vehicles titled under his name, and was involved in several companies. The court ultimately found that Jacek was not a

credible witness and was attempting to obscure his true income and earning potential in order to reduce his support obligation. The court therefore determined that despite his testimony to the contrary, Jacek's net income was $8,000 a month and based his support obligations on that amount. This court affirmed the trial court's determination of Jacek's net income and his support obligation finding no abuse of discretion. *In re Marriage of Glod*, 2017 IL App (1st) 151768-U (unpublished order under Illinois Supreme Court Rule 23). The trial court's order and determination of Jacek's income thus became *res judicata* as to the facts at the time it was entered. *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 41.

¶ 19      In his petition to modify, Jacek did not address the trial court's findings from the 2014 trial, but instead insisted that his sole source of income derived from his employment as a truck driver for Prime Enterprises, a company owned by Pajak. Jacek claimed to have no other assets aside from a personal vehicle and testified that he had no bank accounts. In support of these contentions, Jacek submitted his pay stubs from Prime Enterprises, a financial affidavit, and tax forms. Jacek testified that he closed all of his bank accounts because it became difficult to access money from them because of Marta's repeated attempts to subpoena the accounts. In short, Jacek asserted that his current income was substantially less than it was found to be at the time of the 2014 trial showing a change in circumstances. It is well-settled that a reduction in income can constitute a change in circumstances if such reduction is made in good faith. *In re Marriage of Ross*, 355 Ill. App 3d 1162, 1166 (2005) (citing *In re Marriage of Horn*, 272 Ill. App. 3d 472, 476 (1995)). Here, there is no indication that Jacek's reduction in income was the result of bad faith.

¶ 20      Contrary to the 2015 dissolution judgment in which the trial court imputed income to Jacek based on the fact that he could earn substantially more money towing vehicles, the circuit court here found that in 2008, Jacek briefly entered the tow truck business because he believed it would

earn the family more income. The circuit court concluded, however, that Jacek's foray into the tow truck business "did not work out as planned and he returned to driving a truck a few years later." The record shows that Jacek first drove his truck for Bulldog Express earning $15 to $20 per hour.[1] Around March 2017, Bulldog Express went out of business and some of their business was acquired by Fore Transport, Inc. Jacek briefly drove trucks for Fore Transport at around the same hourly rate before Pajak purchased a truck for Jacek to drive and started Prime Enterprises. Jacek then began driving trucks for Prime Enterprises earning about $800 per week. Thus, the record supports the circuit court's conclusion in this case that that Jacek's income at the time he filed the petition to modify was substantially less than the $8,000 per month that the trial court imputed to him in 2015.

¶ 21    Marta asserts, however, that Jacek is once again disguising his true income, just as he did in the 2014 trial by hiding assets and failing to disclose sources of income. For instance, Marta points out that on several documents submitted as exhibits, Jacek identified himself as the "owner/operator" of Prime Enterprises. There were also documents submitted in which Jacek identified himself as the "owner/operator" of Fore Transport. However, other exhibits show that Jacek was merely a driver for Fore Transport in March 2017 and a 1099 form submitted by Fore Transport showed that Jacek was paid only $4,690.69 by Fore in 2017.[2] Marta insists, however, as she did before the trial court, that Jacek, not Pajak, is the owner of Prime Enterprises and is merely using Pajak to hide his true income. Marta points out that Pajak testified at her deposition that she was not familiar with the trucking industry and did not even know the make and model of the truck

---

[1]Jacek's hourly rate was temporarily reduced after he spent about a month in the Cook County Jail after he was held in contempt for failing to make support payments.

[2]Another document showed that Jacek resigned from Fore Transport in April 2017 because he was not "making enough money."

the business owned. The trial court, however, considered the same arguments and credited Jacek's testimony that he approached Pajak with the idea to purchase the truck because she could afford it and he could not. Jacek testified that he worked as Pajak's sole employee and she paid him an hourly rate and owned and operated the business. Financial statements submitted by Prime Enterprises showing payments to Jacek seem to support this conclusion.

¶ 22    Notably, there seems to be none of the subterfuge and obscurement of assets that the trial court found in 2014. Marta asserts that Jacek failed to provide any evidence documenting his income, but the record belies that contention. Jacek submitted pay stubs, a 1099 form, and a financial affidavit. Further, the exhibits submitted at trial support Jacek's testimony that he has no bank accounts, no retirement accounts, and no other sources of income other than his employment with Prime Enterprises. More importantly for our purposes here, the trial court did not find credibility issues with Jacek's testimony regarding his finances as the trial court did in 2014. Instead, the court found that Jacek testified credibly that his weekly income was $800. "[I]t is well established that the credibility of the witnesses and weight to be given to their testimony is for the trier of fact to decide, and a reviewing court may not substitute its judgment for that of the fact finder." *In re Marriage of Anderson*, 409 Ill. App. 3d at 199 (citing *In re Marriage of Gordon*, 233 Ill. App. 3d 617, 657-58 (1992)). Accordingly, we cannot say that the trial court abused its discretion in granting Jacek's petition to modify his child support obligation based on his reduction in income.

¶ 23                                B. Rule to Show Cause

¶ 24    We will next address Marta's contention that the circuit court erred in denying her petitions for rule to show cause. A rule to show cause is a contempt petition to enforce maintenance and child support awards contained in a judgment of dissolution. *In re Marriage of Berto*, 344 Ill. App.

3d 705, 711 (2003). "A rule to show cause is one means by which to bring an alleged contemnor before the trial court when the failure to comply with a court order is the alleged contemptuous behavior." *Id.* (citing *In re Marriage of Rizza*, 237 Ill. App. 3d 83, 87 (1992)). We will not overturn a trial court's decision discharge a rule to show cause absent a clear abuse of discretion. *Berto*, 344 Ill. App. 3d at 712.

¶ 25    As noted, Marta filed two petitions for rule to show cause during the proceedings. In the first petition, Marta contended that Jacek should be held in contempt of court for his failure to pay half of the uncovered medical expenses, educational expenses, and health insurance premiums for the parties' minor children in accordance with the February 2015 dissolution judgment. As the circuit court recognized, however, there was no order requiring Jacek to pay half of the children's educational expenses or health insurance premiums, so he could not be held in contempt for his failure to comply with an order that did not exist. With regard to Jacek's obligation to pay half of the children's uncovered medical expenses, the court found that Jacek was not "willful and contumacious" in his failure to pay these expenses because his financial information suggested that he simply lacked the ability to pay the amounts requested. Similarly, with regard to Marta's second petition for rule to show cause, in which she contended that Jacek should be held in contempt for his failure to pay the full amount of his support obligation, the court found that Jacek did not have the "financial wherewithal" to pay the amounts requested. This is consistent with the trial court's determination that Jacek's financial circumstances had substantially changed since the entry of the February 2015 dissolution judgment and that he lacked the ability to pay the amount of support awarded in that order. The court noted that the majority of Jacek's income was already going toward his substantial support obligation and arrearage—at the time of judgment, more than $300,000—and that he simply lacked the financial ability to make any additional payments.

Accordingly, we find that the trial court did not abuse its discretion in denying Marta's petitions for rule to show cause.

¶ 26                                C. Other Contentions

¶ 27    We will briefly address the other myriad contentions Marta raises in her *pro se* brief. First, Marta contends that the court erred in ruling on Jacek's petition because the petition was not properly before the court. This contention appears to be based primarily on the fact that Jacek originally filed the petition in March 2016 before this court's order in the original appeal and then Jacek filed the same petition in July 2017. Marta fails to explain how this procedure would result in the petition not being properly before the trial court. Moreover, there are several orders for continuance and hearings that reference Jacek's motion to modify and Marta never challenged whether the petition was properly before the court. Even in her motion to strike and dismiss Jacek's petition to modify, she merely challenged the merits of the motion, rather than whether it was properly before the court. Marta also asserts that Jacek's petition was struck by the circuit court and he failed to file a new petition, but no such order appears in the record.

¶ 28    Marta also contends that the trial court was improperly biased against her. Marta fails to support this contention with any evidence aside from the fact that the trial court ultimately granted Jacek's petition to modify and denied her petitions for rule to show cause and various other pleadings. "Judges *** are presumed impartial, and the burden of overcoming the presumption by showing prejudicial trial conduct or personal bias rests on the party making the charge." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31.

> "A judge's rulings alone almost never constitute a valid basis for a claim of judicial
>
> bias or partiality. [Citation.] Allegedly erroneous findings and rulings by the trial court are

insufficient reasons to believe that the court has a personal bias for or against a litigant.

\*\*\*

Rather, the party making the charge of prejudice must present evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002).

Marta failed to present any evidence of prejudicial trial conduct or evidence of the trial judge's personal bias. Instead, her claims appear to stem merely from the trial court's entry of rulings adverse to her. This is insufficient to support her claim of bias.

¶ 29    Finally, Marta raises a number of contentions that were not raised before the trial court including contentions concerning the trial court's calculation of Jacek's support obligation and his share of the children's medical expenses. It is well-settled that arguments not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 72. We note only that the circuit court's order determining the amount of support is consistent with the statutory guidelines set out in the Act (750 ILCS 5/505 (West 2016)) and we find no error.

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.